UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SANAZ ASHTARI, et al.,  )<br>  )<br>    Plaintiffs,  )<br>  )<br>    v.  )<br>  )<br>MIKE POMPEO, in his official capacity  )<br>as Secretary of State, et al.,  )<br>  )<br>    Defendants.  )<br>  ) | Case No. 19-cv-3797 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.**

On February 18, 2015, Plaintiff Sanaz Ashtari, a U.S. citizen residing in Texas, initiated the legal process required to bring her Iranian parents, Plaintiffs Abdollah Ashtari and Saedeh Mozaffari, to the United States.[1] Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 61, 79. This case concerns the delay in processing their visa applications. Although Ms. Mozaffari's visa was approved almost four years later, shortly after the initiation of this lawsuit,[2] *see* Defs.' Mot. to Dismiss, ECF No. 9 [hereinafter Defs.' Mot.], Decl. of Chloe Dybdahl, ECF No. 9-2 [hereinafter Dybdahl Decl.], ¶ 4, Mr. Ashtari's application remains in limbo to this day, *id.* ¶ 5.

Mr. Ashtari's visa application was sent to the U.S. Embassy in Ankara, Turkey, for processing, *see* Compl. ¶ 61, where he appeared for a visa interview on August 24, 2016, *id.* at ¶ 63; Dybdahl Decl. ¶ 5. Five days after his interview, Mr. Ashtari was notified by email that his "'visa case ha[d] been refused under Section 221(g) of the U.S. Immigration and Nationality Act

---

[1] The Immigration and Nationality Act ("INA") provides that a U.S. citizen who wishes to bring a foreign national relative to the United States must file a Petition for Alien Relative (Form I-130) with the United States Customs and Immigration Service ("USCIS"). 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1).
[2] The case was voluntarily dismissed as to Ms. Mozaffari on February 25, 2020. *See* Notice of Voluntary Dismissal, ECF No. 8.

["INA"]' and that 'further administrative processing' of his application was required." Compl. ¶ 64. He was told that process, "on average[,] takes four months." *Id.*

Nearly a year later, while Mr. Ashtari's application was "still undergoing [ ] required administrative processing," *id.* ¶ 65, President Trump issued Presidential Proclamation 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats." 82 Fed. Reg. 45,161 (Sept. 24, 2017) [hereinafter Proclamation]. Proclamation 9645 bans citizens of eight countries, including Iran, from entering the United States. *Id.* § 2. Although a blanket ban, the Proclamation does provide that "a consular officer . . . may, in [his] discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ." *Id.* § 3(c). "A waiver may be granted only if a foreign national demonstrates to the consular officer's . . . satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." Proclamation § 3(c)(i). The Proclamation also requires the Secretary of State and the Secretary of Homeland Security to "adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." *Id.*

Pursuant to that adopted guidance, on March 22, 2018, the U.S. Embassy in Ankara requested that Mr. Ashtari complete form DS-5535, titled "Supplemental Questions for Visa Applicants." Compl. ¶ 69. Several weeks later, Ms. Ashtari checked on the status of her father's application, and was informed that "[a] consular officer [had] reviewed [his] case with its supporting documents and proposed a waiver for [him]." *Id.* ¶ 71. "Therefore," the email explained, "[his] case has been under administrative process for further evaluation." *Id.* "We are

processing [his] case as quickly as possible," the Embassy promised, noting that the process "may take months." *Id.*  As the months passed, Ms. Ashtari would periodically inquire as to the status of her father's application with the Embassy in Ankara and at one point even reached out to her Senator for help. *Id.* ¶¶ 71–73.  Each time, she was given a variation of the same response—that Mr. Ashtari's case was "still undergoing the required administrative process," and a decision on his waiver was still pending. *Id.* ¶¶ 72, 74.  As of the date the Complaint was filed, the online status tracker for Mr. Ashtari's application reflected that his "case [was] [ ] undergoing necessary administrative processing," and that it "c[ould] take several weeks." Compl. ¶ 75; *see also id.*, Ex. E, ECF No. 1-5.  But at that point, it had already been over three years since Mr. Ashtari's case was "refused," Compl. ¶ 64, and over a year and a half since he submitted the Supplemental Questions in support of his waiver determination, *id.* ¶ 69.

Tired of waiting, Plaintiffs initiated this action on December 20, 2019, seeking a writ of mandamus or an order under the Administrative Procedure Act ("APA") compelling unreasonably delayed agency action. *See id*. ¶¶ 141–165.  Defendants then filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot, Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss, ECF No. 9-1 [hereinafter Def.'s Mem.].  Plaintiffs oppose Defendants' motion and have cross moved for summary judgment. *See* Pls.' Cross Mot. for Summ. J. & Opp'n to Defs.' Mot. to Dismiss, ECF No. 11, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss & in Supp. of Pls.' Cross Mot. for Summ. J., ECF No. 11-2 [hereinafter Pls.' Mem.].  For the reasons explained below, the court denies both motions.

## II.

### A.

Defendants' motion to dismiss invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With regard to the former, "[t]here is a presumption against federal court jurisdiction, and the burden is on the party asserting the jurisdiction . . . to establish that the [c]ourt has subject matter jurisdiction over the action." *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). When reviewing a motion to dismiss under 12(b)(1), courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B.

Plaintiffs' motion implicates the standard for summary judgment. Although Rule 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a), "in APA cases, the summary judgment standard functions slightly

4

differently, because the reviewing court generally . . . reviews the agency's decision as an appellate court addressing issues of law." *Pol'y & Rsch., LLC v. United States Dep't of Health and Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (cleaned up). Stated another way, "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Accordingly, "whether the issue is one of reviewability or otherwise, the court must limit its review to the administrative record and the facts and reasons contained therein to determine whether the agency's action was consistent with the relevant APA standard of review." *Id.* (cleaned up). Where a plaintiff seeks to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the "claim . . . can proceed only where [the] plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphases in *Norton*)).

### III.

#### A.

The court first addresses Defendants' two intertwined jurisdictional arguments. They argue that because "a consular officer already denied [Mr.] Ashtari's visa application," Defs.' Mem. at 1, both the mootness and consular nonreviewability doctrines bar judicial review of Plaintiffs' claims, *id.* at 1–2; *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999) ("This circuit has recognized, as has every circuit to consider the issue, that the courts are without authority to displace the consular function in the issuance of visas." (internal quotation marks omitted)); *see also Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority

extends only to actual cases or controversies.").[3]  But these arguments mischaracterize the crux of Plaintiffs' Complaint.  Plaintiffs do not challenge the refusal of Mr. Ashtari's visa application in the first instance.  As nearly every other judge in this District who has considered this issue on almost identical facts has observed, what Plaintiffs really seek here is to compel a decision on Mr. Ashtari's waiver eligibility.  *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 92 & n.3 (D.D.C. 2020) ("Although her complaint and briefing often frame [plaintiff's] requested relief as adjudication of her visa application, the Court thinks it abundantly clear from context that what [she] is really seeking is adjudication of her waiver eligibility."); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 113–14 (D.D.C. 2020) (construing the plaintiff's request for adjudication of her visa application as a request for adjudication of her "waiver eligibility, which [she] view[ed] as part of the overall visa application process").  *But see Joorabi v. Pompeo*, No. 20-cv-108, 2020 WL 2527209 (D.D.C. May 17, 2020).  Because a decision on Mr. Ashtari's waiver eligibility remains pending, Plaintiffs' claims are neither moot nor barred by the doctrine of consular nonreviewability.  *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) ("[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application."); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) ("[W]hile the doctrine of consular non-reviewability would almost certainly bar this Court from evaluating a consular officer's denial of a waiver, it does not prevent the Court from considering Plaintiffs' claim that the Government has unreasonably delayed rendering a decision.").

---

[3] As other courts in this District have noted, "[t]here is some ambiguity as to whether the doctrine of consular non-reviewability" is technically a matter of jurisdiction or is instead more properly classified as a merits matter. *Didban v. Pompeo*, 435 F. Supp. 3d 168, 173 n.2 (D.D.C. 2020); *see also Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 92 n.2 (D.D.C. 2020).  Because the court concludes that the doctrine does not apply here, there is no need to resolve that issue.

B.

Defendants next argue that Plaintiffs have not stated a claim under the APA. At the threshold, they contend that "the waiver program is governed exclusively by the Proclamation—a presidential action that is not subject to the APA"—and therefore the reasonableness of how long the State Department has taken to process a waiver is not reviewable. Defs.' Mem. at 10–11. But, as the court observed in *Moghaddam*, that argument "overlook[s] several important points." 424 F. Supp. 3d at 120. First among them is that "although 'the APA does not expressly allow review of the President's actions,' *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), Plaintiffs here do not challenge the President's actions[,] and instead challenge agency adherence to the Proclamation itself and agency guidance." *Moghaddam*, 424 F. Supp. 3d at 120.[4] When federal agencies set rules for themselves, "even gratuitous procedural rules that limit otherwise discretionary actions," they must adhere to them. *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (applying the "*Accardi* doctrine" as established in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *see also Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ("It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion."). "In fact, in the immigration context, courts have found that the *Accardi* doctrine's ambit is not limited to rules attaining the status of formal regulation, and that it can be applied to internal agency guidance." *Moghaddam*, 424 F. Supp. 3d at 120–21 (cleaned up) (citing *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991)).

---

[4] Although the D.C. Circuit has "has not clearly determined whether action taken pursuant to the Proclamation is reviewable," *Moghaddam*, 424 F. Supp. 3d at 120, it has held that agency regulations promulgated pursuant to executive orders are reviewable under the APA, *see Chamber of Com. v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996); *cf. Tulare Cnty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002) (implying that challenge to agency action pursuant to presidential proclamation might have been reviewable under APA if plaintiffs had alleged such claim with "sufficient specificity").

7

The question then is whether Plaintiffs have alleged facts sufficient to plausibly establish that Defendants were bound by policies or internal agency guidance requiring them to decide Mr. Ashtari's waiver eligibility. They have. Included in their pleading is State Department guidance, intended to supplement its Foreign Affairs Manual, entitled "Operational Q&A on P.P. 9645 Travel Restrictions." Compl., Ex. A., ECF No. 1-1. Regarding waivers, the guidance unequivocally states that each visa applicant who qualifies for a waiver under Section 3(c) of the Proclamation "must be considered for a waiver." *Id.* at 2. And regarding visa refusals, it provides that "before [a consular officer] refuse[s] an applicant under the [Proclamation], [he] must determine whether the applicant may qualify for a waiver," among other specific procedural requirements. *Id.* at 4. Thus, while Defendants may be right that "the decisions to grant or deny a waiver are committed [ ] to the discretion of the executive branch," *see* Defs.' Mem. at 11, Plaintiffs have at least plausibly shown that the agency action they seek to compel—a decision on the waiver itself—is not, *see, e.g.*, *Moghaddam*, 424 F. Supp. 3d at 121 (finding, based on government pronouncements, counselor "officers do not have the discretion to *never* act on a waiver application"); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 43 (D.D.C. 2020) (same).

Relatedly, Defendants assert that the State Department's delay in making a waiver decision is not subject to the APA because Section 9(c) of the Proclamation disclaims the creation of "any right or benefit, substantive or procedural" against the United States or any of its agencies. Defs.' Mem. at 11. But, again, Plaintiffs here are not challenging the Proclamation, but the State Department's delay in determining whether Mr. Ashtari qualifies for a waiver. That inaction is subject to and reviewable under the APA. *See Thomas*, 438 F. Supp. 3d at 43 (holding that, just because the Proclamation "'is not intended to and does not, create any right or benefit,' *see*

Proclamation at Sec. 9(c), does not mean that the defendants have completely unchecked discretion").

Next, Defendants again invoke the doctrine of consular nonreviewability, Defs.' Mem. at 9 (citing 5 U.S.C. § 706(2)), and additionally contend that Plaintiffs' claims are unreviewable because they involve "agency action [that] is committed to agency discretion by law," *id.* at 10 (quoting 5 U.S.C. § 701(a)(2)).  As already noted, the consular nonreviewability doctrine does not apply to the withholding of a waiver determination.  Furthermore, as discussed, the State Department has adopted policies that commit the agency to deciding a qualified person's eligibility for a waiver.  The agency "do[es] not have the discretion to *never* act on a waiver application." *Moghaddam*, 424 F. Supp. 3d at 121 (emphasis added); *accord Thomas*, 438 F. Supp. 3d at 43.

Finally, the fact that the agency's policies reflect no specific timeframe to act on waivers is not fatal to a claim under the APA.  The APA itself requires agencies to act within a reasonable time.  *See* 5 U.S.C. §§ 555(b), 706(1).  In considering whether agency delay is unreasonable, courts in this Circuit apply the six factors articulated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) (*TRAC*).[5]  Thus, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

---

[5] The *TRAC* factors are: "(1) The time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *In re United Mine Workers of Am. Int'l Union,* 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC,* 750 F.2d at 80).

The court is aware that several other judges in this District have gone on to apply the *TRAC* factors in similar cases, and to find—as a matter of law—that an approximately two-year delay in processing visa waivers is not unreasonable.  *See, e,g*, *Didban*, 435 F. Supp. 3d at 175–77; *Bagherian*, 442 F. Supp. 3d at 93–96; *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397-ABJ, 2020 WL 1308376, at *7–9 (D.D.C. Mar. 19, 2020); *Sarlak v. Pompeo*, No. 20-cv-35-BAH, 2020 WL 3082018, at *4–6 (D.D.C. June 10, 2020).  However, without wading into case-by-case comparisons, this court is satisfied that the claims advanced here meet Rule 12(b)(6)'s plausibility standard.  Plaintiffs have incorporated into their Complaint congressional testimony and internal policy guidance showing the State Department, in June and September 2019, touted a new electronic vetting system that gives it the ability to make waiver determinations in a matter of days following interviews.  *See* Pls.' Mot., Ex. B, Testimony of Edward Ramotowski, Deputy Assistant Secretary, Bureau of Consular Affairs, U.S. Dep't of State, Sep. 24, 2019, ECF No. 11-4 [hereinafter Pls.' Mot. Ex. B], at 3 ("The new enhanced review is automated . . . and [i]t is now possible that many cases may be issued within days of the application . . . ."); *see also* Compl., Ex. K, ECF No. 1-11 [hereinafter Compl. Ex. K], at 1–2 (explaining policy adjustments "[i]n light of significant enhancements to automated vetting systems over the past 18 months").  By the State Department's own admission, this new vetting system is specifically designed to address the national-security prong of Proclamation 9645's waiver criteria, *see* Pls.' Mot. Ex. B at 3; Compl. Ex. K at 1, which Defendants claim takes the longest to complete, *see* Defs.' Mem. at 3.  These facts make it plausible that Mr. Ashtari's waiver determination has been unreasonably delayed.  It is certainly worthy of further factual development.

C.

By the same token, although Plaintiffs have come forward with facts that are undisputed, the court declines to enter summary judgment in their favor on the present record. Notably, Defendants claim that there are "over 14,000 other visa applicants" awaiting waiver determinations. Defs.' Mem. at 1. The D.C. Circuit has counseled that a court should not compel agency action where the result would merely move a plaintiff ahead in line at the expense of others. *See In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) ("[A] judicial order putting [plaintiff] at the head of the queue simply moves all others back one space and produces no net gain."); *see also Mashpee*, 336 F.3d at 1101 (holding that "the district court erred by disregarding the importance of there being 'competing priorities' for limited resources"). And, based on the limited facts before the court, it is not entirely clear that Plaintiffs seek anything more than a "judicial reordering[] of agency priorities." *Bagherian*, 2020 WL 674778, at *6 (cleaned up).

Ultimately, the question of whether the State Department has taken too long to process Mr. Ashtari's waiver is one that requires the court to "examine 'the facts of [the] particular case' before it." *Mashpee*, 336 F.3d at 1102 (quoting *Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987)). Whether the delay satisfies the "'rule of reason' . . . depend[s] in large part, . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id*. The government will have to address these factors when it moves for summary judgment or risk having judgment entered in Plaintiffs' favor. Accordingly, the court denies Plaintiffs' motion for summary judgment.

D.

Finally, because the court finds that Plaintiffs have stated a claim under the APA, it need not address Plaintiffs' mandamus claim at this time. Mandamus relief is only available when

11

"there is no other adequate remedy available to plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (internal quotation marks omitted). For present purposes, the court is satisfied that the APA supplies such a remedy.

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 9, and Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 11, are denied.

Dated: October 23, 2020

Amit P. Mehta
United States District Court Judge